# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| REBECCA WARDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:09cv00339 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By:  Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rebecca Warden ("Warden") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").  On appeal, Warden principally contends that the Administrative Law Judge ("ALJ") erred by not finding her disabled based on her anxiety and panic attacks and the opinion of her treating counselor, Marilyn K. Hutchins, Ed.D.  The Commissioner maintains that the ALJ properly considered the medical evidence in the administrative record, including the treatment notes and opinion of Dr. Hutchins.  Having reviewed the record, it is clear that the ALJ appropriately considered Warden's mental health issues and the treatment notes and opinions of Dr. Hutchins, and factored those concerns into the disability calculus.  As such, the ALJ's decision is supported by substantial evidence.  Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, that the Commissioner's Motion for Summary Judgment (Dkt. #20) be **GRANTED**, and Warden's Motion for Summary Judgment (Dkt. #17) be **DENIED**.

**I**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

## II

Warden was 44 years old on the date of the ALJ's decision, March 11, 2008. She obtained a GED and worked for many years as a cashier and manager of a convenience store. She was most recently employed as a security guard at a Volvo plant, from which she voluntarily resigned in November, 2006 due to panic attacks and crying on the job. (Administrative Record, hereinafter "R." at 36, 133.)

Warden filed applications for DIB and SSI, claiming disability as of November 8, 2006. In her applications, Warden claimed disability based on depression, panic and anxiety disorder, torn cartilage in left knee, high cholesterol, hiatal hernia, acid reflux and carpal tunnel in right wrist. (R. 133.) Warden's applications for DIB and SSI benefits were rejected by the Commissioner initially based on a medical records reviews by Dr. Shirish Shahane on February 7, 2007 (physical), and E. Hugh Tenison, Ph.D., on February 9, 2007 (mental). (R. 242-265.) This decision was confirmed on reconsideration based on medical records reviews by Dr. Joseph Duckwall on June 14, 2007 (physical), and Louis Perrott, Ph.D., on June 14, 2007 (mental). (R. 282-306.) An administrative hearing was held on February 6, 2008 before an ALJ, at which hearing Warden was represented by counsel. (R. 23-53.)

In a decision issued on March 11, 2008, the ALJ found that Warden had severe impairments consisting of obesity, depression, anxiety, cervical spine radiculopathy/left shoulder problems, degenerative arthritic changes of the right hip and chronic left knee pain. (R. 14.) Considering these impairments, the ALJ found that Warden could not return to her past relevant work but retained the RFC to perform a range of light work that existed in significant numbers in the national economy. (R. 16-22.) Accordingly, the ALJ concluded that Warden is not disabled

under the Act. (R. 22.) The Appeals Council denied Warden's request for review on July 9, 2009 and this appeal followed. (R. 1-5.)

**III**

Warden's principal argument on appeal is that she is disabled by her mental impairments and that the ALJ erred by giving little weight to the opinion of her treating counselor, Marilyn K. Hutchins, Ed.D. The ALJ must provide reasons for giving a treating source's opinion certain weight or explain why she discounted a specific opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); Social Security Ruling ("SSR") 96-2p ("[T]he notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also Kratzer v. Astrue, No. 5:07cv00047, 2008 WL 936753, at *7 (W.D. Va. 2008) (noting the ALJ is expressly obligated to explain the consideration given to his opinions). However, social security regulations do not allow the opinion of Dr. Hutchins, a licensed professional counselor, to be accorded controlling weight, as a counselor is not an acceptable medical source. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Rather, evidence from a counselor may be used to show the severity of an impairment and how it affects one's ability to work. See 20 C.F.R. §§ 404.1513(d), 416.913(d).

The earliest medical document in the administrative record is dated December 26, 2005, eleven months before the claimed onset of disability. This medical record indicates that Warden was seen for a re-evaluation of her medical problems, as well as to establish a primary care

provider. On that date, Dr. Daniel D. Bradley, an internal medicine specialist, conducted a comprehensive review of Warden's medical history and systems. This detailed review makes no mention of anxiety or panic attacks. (R. 220-21.)

Although Warden was seen regularly in Dr. Bradley's office over the next year, no mention was made of any mental health concern until October 19, 2006, shortly before Warden quit work. On that visit, Warden asked the nurse practitioner about "medications for her nerves. She describes a rather stressful social situation. She finds herself crying a lot and anxious." (R. 206.) The nurse practitioner encouraged Warden to pursue counseling and started her on a medication used to treat depression and generalized anxiety disorder. There is no mention in the record of this treatment visit that Warden's work was contributing to her anxiety.

Warden began counseling with Dr. Hutchins on December 7, 2006. Although Dr. Hutchins wrote in a letter dated January 24, 2008 that she had seen Warden twenty-one times, the administrative record contains notes from only three sessions: December 7, 2006, December 14, 2006, and January 11, 2007. (R. 199-203.) At her initial assessment on December 6, 2006, Warden reported being overwhelmed, isolated and stressed. The notes from that session reflect that Warden is raising her two young grandchildren and was constantly worried about the children. Dr. Hutchins' note reflects that "[w]hen she was working, she began having panic attacks because of worry about the children." (R. 199.) The notes also reflect concerns over the health of her father and lack of income. Dr. Hutchins assigned Warden a Global Assessment of Functioning level of 45.[2] Warden reported some improvement a week later, on December 14,

---

[2] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000) (hereinafter "DSM-IV-TR"). A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR at 34.

6

2006. Although her father had passed away in the interim, she expressed relief that he did not suffer and was appreciative of the support shown by her sons. She stated that things were not bothering her as much and that she was going to the grocery store. (R. 202.) Things were not as good a month later. During a counseling session on January 11, 2007, Warden described panic attacks at the grocery store. Due to some family legal troubles, Warden now had responsibility for her grandchildren and said that was all she was able to do right now. (R. 203.)

State agency psychologist E. Hugh Tenison, Ph.D., performed a Mental RFC Assessment and Psychiatric Review Technique on February 9, 2007, expressly reviewing the Clinical Notes from the three Dr. Hutchins' treatment sessions in the record. (R. 261-62.) Dr. Tenison determined that Warden suffered from major depressive disorder and anxiety with panic attacks, posing a moderate limitation in her ability to maintain concentration, persistence or pace, but found she had only mild limitations in her activities of daily living and ability to maintain social functioning. (R. 252, 254, 259.) Dr. Tenison wrote that "[t]he claimant's depression and anxiety, although serious, have begun to improve with treatment. Her ADL's[3] suggest that she could perform repetitive, nonstressful work." (R. 262.) In his Mental RFC Assessment, Dr. Tenison noted a number of areas where Warden was moderately limited, but no areas where she was markedly limited. (R. 263-64.)

On May 10, 2007, Dr. Hutchins completed a Mental Status Evaluation Form for the state agency. (R. 276-280.) This form references an Outpatient Treatment Report (OTR) provided to Virginia Premier Health Plan, Inc. (R. 276, 281.) That report summarizes Dr. Hutchins' contact with Warden as follows:

> Client sought therapy because she was very depressed. She feels isolated and alone. She is trying to raise 2 grandchildren alone. She is stressed by financial, health and family issues. She has

---
[3] In social security regulatory parlance, ADLs refer to activities of daily living.

7

> begun to experience a great deal of anxiety when she goes out in
> public. She is overwhelmed and often feels hopeless.

(R. 281.) Dr. Hutchins reported on this form a current GAF of 45, with one of 60 in the past year.[4] On the Current Mental Status portion of the state agency form, Dr. Hutchins noted that Warden's mood and affect was "flat, depressed, tearful, has panic attacks, very anxious worried." (R. 278.) At the same time, Dr. Hutchins reported that Warden had a cooperative and compliant attitude, was oriented times 4, was adequate in appearance, and had no suicidal ideations, delusions, hallucinations or confusion. (R. 278.) Dr. Hutchins also found Warden's memory to be adequate, her thought content and organization to be "OK," her judgment to be good, her fund of information to be adequate. (R. 278-79.) Dr. Hutchins found Warden's attention span, concentration, persistence and task completion to be adequate, but noted that she "[d]escribes having trouble with concentration." (R. 279.) Dr. Hutchins noted minimal deterioration of adaptive behaviors under stress of daily work-related or work stress. (R. 279.) She concluded by stating that "we have been working in counseling on ways to reduce stress, to relax, and on coping skills." (R. 280.)

State agency psychologist Louis Perrott, Ph.D., reconsidered Dr. Tenison's assessment on June 14, 2007, and his notes reflect his consideration of the findings on Dr. Hutchins' May 10, 2007 Mental Status Evaluation Form. (R. 305.) Dr. Perrott concluded as follows: "[d]espite some limitations resulting from her mental impairments, this individual retains the capacity to perform simple, unskilled work." (R. 306.)

On January 24, 2008, shortly before the administrative hearing in this case, Dr. Hutchins wrote a letter to Warden's counsel. In that letter, Dr. Hutchins states that she has "diagnosed

---

[4] A GAF of 51-60 indicates that the individual has moderate symptoms or difficulty in functioning. DSM-IV-TR at 34.

[Warden] with moderately severe depression, generalized anxiety disorder and panic attacks."

(R. 313.) In terms of her functioning, Dr. Hutchins wrote:

> She has worked on coping skills that help her accomplish the tasks that make her go out in public to do grocery shopping, go to doctors' appointments, and take care of the children. Anything that requires her to go out in public takes a lot of planning so she can be around the fewest people possible. I do not think that it is possible for Ms. Warden to work because most jobs would require her to be around people and I do not think she can manage that without having serious panic attacks that would increase her depressive symptoms and impact maintaining a job.

(R. 313.) A week later, on January 31, 2008, Dr. Hutchins completed a Mental Health Questionnaire at the request of Warden's counsel. In this form, Dr. Hutchins noted an improvement in her GAF level to 55 and wrote that she "has slight improvement but the stresses in her life impede lasting change." (R. 324.) The improvement in Warden's GAF and the notation of periodic improvement are at odds with the remainder of this Mental Health Questionnaire, which lists extreme limitations in the areas of working in coordination or in proximity with others; completing a normal workday and work week without interruptions from psychologically based symptoms; dealing with stress of semiskilled and skilled work; and using public transportation. Dr. Hutchins noted marked limitations in the areas of maintaining regular attendance; accepting instructions and criticism from supervisors; and dealing with normal work stress. Dr. Hutchins noted that panic attacks were likely if she has to be around people. In terms of functional limitations, Dr. Hutchins noted moderate limitations in activities of daily living; extreme limitations in maintaining social functioning; mild deficiencies in concentration, persistence or pace; and four or more episodes of decompensation in a 12 month period, each of a two week duration. (R. 327.)

9

The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); SSR 96-2p. Warden conceded at argument that Dr. Hutchins, as a Licensed Professional Counsel, may not be accorded controlling weight under the regulations, but her opinion may be used to show the severity of Warden's impairments and how those impairments affect her ability to work. 20 C.F.R. §§ 404.1513(a),(d), 20 C.F.R. 416.913(a),(d).

In this case, the ALJ carefully considered Warden's mental health issues as well as the clinical notes and opinions of Dr. Hutchins and incorporated her findings into the RFC determination. The ALJ specifically took into account Dr. Hutchins' concern regarding Warden's anxiety in public places by limiting her to work involving no more than occasional interaction with the general public. (R. 18.) Further, because of workplace stress, the ALJ limited Warden to work involving simple, routine, repetitive and unskilled tasks. (R. 18.) The

ALJ expressly considered Dr. Hutchins' January 24, 2008 letter, which stated that she did not think Warden could work "because most jobs would require her to be around people." (R. 20.) The ALJ aptly noted that "[s]uch statement does not preclude all employment, and this Administrative Law Judge gives this opinion weight by finding that claimant can perform tasks requiring no more than occasional interaction with the general public. The vocational expert identified jobs in the regional and nation[al] economies requiring no more than occasional interaction with the general public." (R. 20.) The ALJ also evaluated the form completed by Dr. Hutchins on January 31, 2010, noting that the rather extreme findings of problems with functional abilities are inconsistent with an improvement in Warden's GAF to 55 and with references in the clinical notes and other statements to Warden having developed coping skills that allow her to go out into public and perform tasks necessary to raising her two grandchildren. (R. 20.)

Rather than reject the opinion of Dr. Hutchins, the ALJ expressly considered her treatment notes and various functional assessments and wove them into the RFC she fashioned. On balance, therefore, the undersigned cannot conclude that the decision reached by the ALJ is not supported by substantial evidence. Indeed, the ALJ carefully considered all of the evidence in the record and the opinions of Warden's treating sources and reached a reasoned decision consistent with the evidence and the regulations. That a court may reach a different judgment is not ground for reversal and would usurp the administrative process.

Warden also argues that the state agency mental RFC assessments should be discounted because they were performed early on in the administrative process and before Warden had completed much of her therapy with Dr. Hutchins. One problem with this argument is that very few of Dr. Hutchins' treatment records are in the administrative record. Dr. Hutchins wrote that

she saw Warden twenty-one times, but only three of her earliest clinical notes are in the record. The state agency psychologists had the opportunity to review all of the clinical notes that appear in the administrative record, as well as Dr. Hutchins' May 10, 2007 Mental Status Evaluation. The only information from Dr. Hutchins in the administrative record that was not seen by the state agency psychologists was Dr. Hutchins' January 24, 2008 letter and January 31, 2008 Mental Impairment Questionnaire. The ALJ had an opportunity to review and evaluate these two documents, which she did.

Because substantial evidence supports the ALJ's decision, the undersigned must recommend that the administrative decision of the agency by affirmed.

## IV

Warden's medical records also reflect a frequent complaint of left knee pain. Warden was seen for left knee pain by Dr. Bradley at the end of 2005, but x-ray and MRI studies taken at that time reflected no defect. Warden was referred to an orthopedist, Dr. James Lovelace, for left knee pain traceable to a fall in October or November, 2005. (R. 241.) Treatment records from Dr. Lovelace over the next two years, to the extent legible, reflect his opinion that she was not ready for surgery. Instead, he prescribed pain medications and a brace. (R. 237-41, 307-311.) Dr. Lovelace completed a Commonwealth of Virginia Temporary Assistance for Needy Families (TANF) form on October 11, 2007 stating that Warden was unable to work for over one year due to her left knee chronic pain which "causes limited ability to walk or stand, " and Warden's panic attack disorder. (R. 328-29.) Dr. Lovelace did not treat Warden for panic attacks, and the ALJ gave his opinion limited weight. The issue of Warden's knee was factored in, however, as the RFC fashioned by the ALJ was limited to light work in which she had the ability to freely alternate between sitting and standing. (R. 16.) The ALJ reviewed Warden's treatment records,

12

considered the opinions of the state agency physicians that she can perform a range of light work, and relied on the testimony of a Vocational Expert ("VE") at the administrative hearing to support her conclusion that Warden was capable of performing a number of light and sedentary jobs that exist in the national economy. As such, it is clear that the ALJ's decision is supported by substantial evidence.

It is abundantly clear that the ALJ expressly considered the treatment notes and opinions of Warden's treating sources and sufficiently explained the weight accorded to them in her decision. The conclusion reached by the ALJ follows the regulatory framework, is consistent with the entirety of the administrative record and supported by substantial evidence. On this record, there is no basis for reversal of the Commissioner's decision in this case.

V

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion. In affirming the final decision of the Commissioner, the court does not suggest that Warden is free from stress. Certainly, she has multiple sources of stress in her life, including those associated with raising her grandchildren, financial problems, issues facing her sons, health concerns of family members, and lack of family support and attendant isolation. However, the ALJ accounted for Warden's mental and physical impairments in the disability decision, and that decision is plainly supported by substantial evidence. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Warden's claim for

13

benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, defendant's motion for summary judgment (Dkt. # 20) be **GRANTED**, and plaintiff's Motion for Summary Judgment (Dkt. #17) be **DENIED**.

The Clerk is directed to transmit the record in this case to James C. Turk, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Entered: November 4, 2010.

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States Magistrate Judge